IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. |
| ) | |
| 2012 LEXUS RX350, VIN: ) | |
| 2T2BK1BA7CC140194 ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, United States of America, by its attorneys, Tammy Dickinson, United States Attorney for the Western District of Missouri, and James Curt Bohling, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is an action to forfeit property to the United States for violations of 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6).

**THE DEFENDANT IN REM**

2. The defendant 2012 Lexus RX350, VIN: 2T2BK1BA7CC140194, was seized from Alexander McMillin and Michaya Brown-McMillin on April 17, 2014, in Columbia, Missouri pursuant to a federal seizure warrant. It is presently in the custody of the United States Marshals Service in Kansas City, Missouri.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over an action commenced by the United

States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6).

4. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this district; and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 18 U.S.C. § 981(h) and 21 U.S.C. § 881(j), because the owner of the property is located in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395, because the action accrued in this district and the property is located in this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or an attempted transaction in violation of sections 1956, 1957 and 1960 of title 18, United States Code, or is property traceable to such property.

7. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

### Background of Synthetic Cannabinoids

8.  In recent years, individuals have begun to manufacture and traffic in synthetic cannabinoid products, known by many slang terms, including Jamaican, Jolly Roger, Aces and Eights, Conviction X15, Spice, and K2. Synthetic cannabinoid products are a mixture of a "carrier" medium, an organic plant material, such as the herb-like substance Damiana, which has typically been sprayed or mixed with a synthetic chemical compound similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana.

9.  Currently, there are hundreds of synthetic cannabinoid compounds in these products. The five most common of these compounds, 1-pentyl-3-(1-naphthoyl) indole (JWH-018), 1-butyl-3-(1-naphthoyl) indole (JWH-073), 1-[(2-4-morpholinyl) ethyl]-3-(1-naphthoyl) indole (JWH-200), 5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxyclohexyl]-phenol (CP-47,497), and 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyohexy1]-phenol (cannabicyclohexanol; CP-47,497 C8 homologue) became Schedule 1 controlled substances, when they were "emergency scheduled" by the DEA in March 2011.

10. In response to and in circumvention of administrative and legislative actions, clandestine manufacturers and traffickers began distributing synthetic cannabinoid products containing slightly varied synthetic chemical compounds that did not qualify as one of the Schedule 1 controlled substances listed above. Among these synthetic chemical compounds are 1-(5-fluoropentyl)-3-(1-naphthoyl) indole (AM2201), (JWH-201), 1-Pentyl-3-(2,2,3,3-tetrarnethylcyclopropyl) indole (UR-144), and fluoro-UR-144, also known as

3

XLR-11. These substances are hallucinogens and affect the human body in a way similar to THC, the active hallucinogen found in organic marijuana. The Controlled Substances Analogue Enforcement Act of 1986 mandated that, when intended for human consumption, synthetic chemical compounds whose chemical structures are similar to a Schedule I or II controlled substance and cause similar or greater psychoactive effects or are represented to or intended to cause similar or greater psychoactive effects, are treated as Schedule I controlled substances. See 21 U.S.C. §§ 802(32) and 813. Such synthetic cannabinoid products are thus referred to as controlled substance analogues. The DEA considers UR-144 to be an illegal controlled substance analogue.

11. On May 16, 2013, the DEA finalized the temporary placement of three additional synthetic cannabinoids onto the list of illegal Schedule I drugs under the Controlled Substances Act. These drugs are UR-144, XLR11, and AKB48. The placement will last for two years, unless DEA extends that time or Congress acts to make the placement permanent, as it did with regard to the substances included in the 2011 temporary scheduling by DEA.

12. On July 9, 2012, the Synthetic Drug Abuse Prevention Act of 2012, P.L. 112-144 at 126 Stat. 993, added fifteen additional synthetic chemical compounds, defined as cannabimimetric agents, to Schedule I. Among those added to Schedule I was 1-(5-fluoropentyl)-3-(1-naphthoyl)indole (AM2201).

13. Synthetic cannabinoid products are commonly purchased in novelty shops, head shops, tobacco shops, convenience stores, adult stores, and over the internet. They are often marketed as herbal incense and almost always carry the markings "not for human consumption." These markings are routinely affixed to these packages in an attempt to prevent the product from

being identified as a controlled substance analogue of the newly controlled synthetic cannabinoids. Users of these products have reported effects similar to marijuana, but many times greater including but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

## Details of the Investigation

14. On Wednesday, January 16, 2013, a State of Missouri search warrant was conducted at the Moore 4 You liquor store, in Queen City, Missouri. As a result of the search warrant, numerous packets of suspected synthetic cannabinoids were seized from the store. The owner of the store, Tina Moore, indicated all of the packets of suspected synthetic cannabinoids came from Dynamic Scents. Moore was asked if she would contact Dynamic Scents and order packets of suspected synthetic cannabinoids, so they could be seized and analyzed. Moore contacted ALEXANDER V. MCMILLIN (MCMILLIN), via text message and ordered 240 packets of a suspected synthetic cannabinoid labeled "Jolly Scents." MCMILLIN confirmed the order and instructed Moore to meet him at a location to be determined at a later time, in Columbia, Missouri, on Thursday, January 17, 2013.

15. On Thursday, January 17, 2013, at approximately 10:15 a.m., Columbia Police Detectives Jeff Rukstad and Harlan Hatton established positions of surveillance near MCMILLIN's residence, in Columbia, Missouri. At approximately 11:00 a.m., Moore informed me that she received a text message from MCMILLIN indicating her order was complete and she was to meet MCMILLIN in the area of Staples' parking lot, in Columbia, Missouri, at approximately 12:15 p.m. Trooper Danny Bickell, Lake Area Narcotics Enforcement Group (L.A.N.E.G.), and Task Force Officers Bobby Kyle, Brian Pratt, and Tobin Hollmann established

5

positions of surveillance in the area of the Staples' parking lot, at 115 Conley Road, in Columbia, Missouri. At approximately 10:30 a.m., MCMILLIN was observed leaving his residence carrying two boxes. MCMILLIN was followed from his residence as he drove to the Staples' parking lot, located at 115 Conley Road, Columbia, Missouri, arriving at the parking lot at approximately 10:35 a.m.

16. After MCMILLIN arrived at the Staples' parking lot, Trooper Bickell observed MCMILLIN exit his vehicle and walk inside the Sam's Club. At approximately 12:05 p.m., MCMILLIN exited Sam's Club and walked back to his vehicle. While MCMILLIN was at his vehicle, an unidentified individual in a silver vehicle met with MCMILLIN in the parking lot. It appeared MCMILLIN was distributing synthetic cannabinoids to the individual in the silver vehicle. After the silver vehicle departed, TFO Hollmann parked his vehicle next to MCMILLIN's vehicle. TFO Hollmann asked MCMILLIN if he had an order for the Moore 4 You liquor store. MCMILLIN responded by saying, "Do you have a check?" At that time, TFO Hollmann identified himself to MCMILLIN.

17. MCMILLIN voluntarily gave TFO Hollmann a box containing packets of suspected cannabinoids. The box contained numerous packets of suspected synthetic cannabinoids labeled 4 Bidden, Jolly Scents and Island Breeze. During the contact, MCMILLIN indicated he was a salesman for a company named Dynamic Scents. Dynamic Scents is known to the investigating agents as a supplier of Cannabinoids.

18. At approximately 1:44 p.m., TFO Hollmann contacted MCMILLIN via cellular telephone and informed MCMILLIN a search warrant had been obtained to search his residence.

6

MCMILLIN gave TFO Hollmann the code to his garage door, so entry could be made. MCMILLIN told TFO Holmann "everything you are looking for is in the garage."

19. During the search of the residence, numerous packets of suspected synthetic cannabinoids were discovered along with several documents supporting the distribution of synthetic cannabinoids. Additionally, $82,149.00 in U.S. currency was discovered hidden throughout the residence. The U.S. currency was packaged in zipped plastic baggies with approximately $1,000 in United States currency per plastic bag. MCMILLIN and Michayah Brown (girlfriend or fiancé of MCMILLIN at the time, now Michayah McMillin) were the only persons occupying the residence.

20. Some of the exhibits containing suspected cannabinoids were sent to the DEA North-Central Laboratory in Chicago, Illinois and some of the exhibits were sent to the DEA HIDTA laboratory in Kansas City, Missouri. Senior Forensic Chemist Lucreitia J. Weber (Weber) of the DEA HIDTA laboratory in Kansas City, Missouri, performed tests on exhibits 35, 36, and 38 from the search warrant conducted on MCMILLIN's residence. Weber's findings were that exhibit 35 labeled "Mayan;" exhibit 36 labeled "RMX;" and exhibit 38 labeled "Island Breeze;" were all found to contain 1-Pentyl-3-(2,2,3,3-tetramethylcyclopropoyl) indole (UR-144).

21. As stated earlier, MCMILLIN told TFO Hollmann that he (MCMILLIN) worked for Dynamic Scents as a salesperson. According to records from the Missouri Secretary of State, on December 7, 2011, Patrick Ross Hawkins, Alexander Vladimir McMillin, Molly Jane Hawkins, and Mathew Ashby Hawkins organized Dynamic Scents.

22. IRS-CI Special Agent Jeff Abbott obtained and reviewed records maintained by Boone County National Bank regarding Dynamic Scents, LLC. Those records reflect that

Mathew Hawkins opened account number ending in 5186 in the name of Dynamic Scents, LLC, on December 30, 2011, and is the sole signature authority identified for this account.

23. The primary business activity being conducted by Dynamic Scents, LLC, is the manufacture and distribution of synthetic cannabinoids. Review of account 5186 identified the primary source of deposits as being from other entities known to the investigation to be distributing synthetic cannabinoids. A summary of the deposits during the period January 1, 2012, through December 31, 2012, by source is displayed in the table below.

| SOURCE OF DEPOSIT | AMOUNT |
|---|---|
| 10 Minute T-Shirt, LLC. | $29,340.00 |
| Alliance Trade | 4,004.00 |
| Al's Drive Thru Liquor | 3,636.00 |
| Bocomo Bay, Inc. | 174,314.00 |
| C&C Distributing | 19,475.00 |
| French Quarter Apartments | 6,295.00 |
| Cash | 2,200.00 |
| DNNS, LLC. DBA Starmart | 23,646.00 |
| Fifth Essence, LLC. | 3,197.50 |
| Frick & Frack , LLC | 29,641.50 |
| Head Space | 3,400.00 |
| Hempies | 61,224.50 |
| I Love Spicy KC | 23,625.00 |
| Jessica Lovett DBA Bad Habits | 86,775.00 |
| Jim or Tina Moore | 125,478.50 |
| Matt Morgan | $3,265.00 |
| Mozark Products, LLC. | 11,200.00 |
| Profitable Pizza 2, Inc. DBA Sam's Package | 115,718.50 |
| Puff N Snuff | 626,612.50 |
| Sixties Spirit | 1,870.00 |
| Tuckers Grocers and Processing | 23,598.50 |
| Up In Smoke | 4,200.00 |
| Vicking Package Liquor, Inc. | 29,249.00 |
| | |
| **Total** | **$1,411,965.50** |

24.     On December 11, 2012, four teller checks were written from Dynamic Scents' bank account number 5186, each in the amount of $100,000.00, made payable to Patrick Hawkins, Mathew Hawkins, Molly Carmichael, and ALEXANDER MCMILLIN.   The issuance of these checks effectively closed the business banking account in the name of Dynamic Scents.   On January 02, 2013, Boone County National Bank account number ending in 8998 was opened in the name of Order Refill, LLC.   The only individual with signature authority over this bank account is Mathew Hawkins.   The account was opened with four checks of $20,000.00 each from Mathew Hawkins, Patrick Hawkins, Molly Carmichael, and ALEXANDER MCMILLIN.

25.     Based upon surveillance conducted throughout this investigation along with analysis of Order Refill, LLC's banking records the known primary business activity being conducted by Order Refill, LLC, is the manufacture and distribution of synthetic cannabinoids.   Review of Boone County National Bank account number 8998 identified the primary source of deposits as being from other entities known to the investigation to be distributing synthetic cannabinoids.   A summary of the deposits from known retailers of synthetic cannabinoids during the period January 1, 2012, through December 31, 2012, is displayed in the table below:

| DATE | CHECK NUMBER | DATE WRITTEN | SOURCE | DEPOSIT AMOUNT | Memo Line |
|---|---|---|---|---|---|
| 01/11/2013 | 6235 | 01/11/2013 | BOCOMO BAY | 17,117.50 | |
| 01/22/2013 | 6248 | 01/18/2013 | BOCOMO BAY | 636.00 | |
| 03/05/2013 | 6311 | 03/05/2013 | BOCOMO BAY | 312.00 | |
| 04/08/2013 | 6353 | 04/04/2013 | BOCOMO BAY | 284.00 | |
| 04/18/2013 | 6367 | 04/12/2013 | BOCOMO BAY | 340.00 | |
| **TOTAL BOCOMO BAY** | | | | 18,689.50 | |
| 01/07/2013 | 1361 | 01/05/2013 | JESSICA LOVETT BAD HABITS | 7,120.00 | |
| 01/09/2013 | 1362 | 01/09/2013 | JESSICA LOVETT BAD HABITS | 6,550.00 | |
| 01/17/2013 | 1363 | 01/16/2013 | JESSICA LOVETT BAD HABITS | 11,730.00 | |
| 02/19/2013 | 1339 | 02/18/2013 | JESSICA LOVETT BAD HABITS | 11,800.00 | |

| Date | Check # | Date | Payee | Amount | Memo |
|---|---|---|---|---|---|
| 02/28/2013 | 1340 | 02/28/2013 | JESSICA LOVETT BAD HABITS | 16,400.00 | |
| 04/29/2013 | 1108 | 04/29/2013 | JESSICA LOVETT BAD HABITS | 6,000.00 | |
| 05/02/2013 | 1065 | 05/02/2013 | JESSICA LOVETT BAD HABITS | 10,000.00 | |
| **TOTAL JESSICA LOVETT DBA BAD HABITS** | | | | **69,600.00** | |
| 01/04/2013 | 1823 | 01/04/2013 | JIM OR TINA MOORE | 5,695.00 | INCENSE |
| 01/04/2013 | 1822 | 01/04/2013 | JIM OR TINA MOORE | 4,760.00 | |
| 01/11/2013 | 1826 | 01/07/2013 | JIM OR TINA MOORE | 5,033.00 | |
| 01/11/2013 | 1827 | 01/07/2013 | JIM OR TINA MOORE | 5,033.00 | |
| **TOTAL JIM OR TINA MOORE** | | | | **20,521.00** | |
| 01/07/2013 | 2344 | 01/05/2013 | PUFF N SNUFF | 15,300.00 | |
| 01/22/2013 | 2362 | 01/21/2013 | PUFF N SNUFF | 21,900.00 | |
| 02/04/2013 | 2370 | 02/01/2013 | PUFF N SNUFF | 5,800.00 | |
| 02/12/2013 | 2392 | 02/08/2013 | PUFF N SNUFF | 4,000.00 | |
| 02/19/2013 | 2374 | 02/18/2013 | PUFF N SNUFF | 15,150.00 | |
| 02/19/2013 | 2396 | 02/14/2013 | PUFF N SNUFF | 8,925.00 | |
| 03/11/2013 | 5852 | 03/06/2013 | CHARLES AUSTIN | 10,350.00 | PUFF N SNUFF |
| 03/18/2013 | 5870 | 03/15/2013 | CHARLES AUSTIN | 9,950.00 | |
| 03/22/2013 | 5873 | 03/21/2013 | CHARLES AUSTIN | 4,950.00 | |
| **TOTAL PUFF N SNUFF** | | | | **96,325.00** | |

26. On January 11, 2013, check number 1242 was written out of the Order Refill bank account at Boone County National Bank made payable to ALEXANDER MCMILLIN in the amount of $33,000.00. On the memo line of this check was written "owner profit." This check was deposited into MCMILLIN's Boone County National Bank account number ending in 3905 on January 15, 2013.

27. On January 17, 2013, (the same day the search warrant was conducted at MCMILLIN's residence) ALEXANDER MCMILLIN withdrew $110,000.00 from account number ending in 3905, a Bank of America money market account styled in the name of ALEXANDER "SASHA" VLADIMIR MCMILLIN POD LARISSA MCMILLIN & VLADIMIR MCMILLIN. ALEXANDER MCMILLIN has signature authority over this account. MCMILLIN used the funds withdrawn from this account to purchase a cashier's check in the amount of $110,000 and made payable to Michaya Brown. A review of Landmark Bank records

10

show Michaya Brown deposited this check into her Landmark Bank account number ending in 0025.

28.     On March 13, 2013, ALEXANDER MCMILLIN and Michaya Brown purchased a 2012 Lexus RX 350 for $40,557 in United States currency from Sellers-Sexton, an automotive dealership located in St. Roberts, Missouri.   Employees of the dealership told investigating agents that MCMILLIN brought into the dealership a brown box containing zip-lock bags of United States currency.   MCMILLIN then told dealership employee Yvonne Reeves-Chong he could have converted the cash to a cashier's check but he (MCMILLIN) wanted to see the dealership employees count the money.   MCMILLIN also told various employees of the dealership the Lexus was a wedding present for Michaya Brown.   The vehicle was titled in the name of Michaya Brown.   The portion of the cash payment that consisted of $100 bills or higher totaled $40,500.   The transaction took place at Sellers-Sexton, Inc., automobile dealership, 341 VFW Memorial Drive, St Robert, Missouri 65584.   This payment represents the total sales price for the Lexus.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

29.     The Plaintiff repeats and incorporates by reference the paragraphs above.

30.     By the forgoing and other acts, the defendant 2012 Lexus RX350, VIN: 2T2BK1BA7CC140194, was involved in a financial transaction that represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of a specified unlawful activity, that is the sale and distribution of synthetic cannabinoids, in violation of 18 U.S.C. § 1956, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

31.     The Plaintiff repeats and incorporates by reference the paragraphs above.

32.     By the foregoing and other acts, the defendant 2012 Lexus RX350, VIN: 2T2BK1BA7CC140194, was involved in a monetary transaction derived from a specified unlawful activity, that is the sale and distribution of synthetic cannabinoids, in violation of 18 U.S.C. § 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELEIF

33.     The Plaintiff repeats and incorporates by reference the paragraphs above.

34.     By the foregoing and other acts, defendant 2012 Lexus RX350, VIN: 2T2BK1BA7CC140194, was purchased with the proceeds traceable to illegal drug trafficking in violation of Title 21, United States Code, Sections 841 and 846, and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

                          Respectfully submitted,

                          Tammy Dickinson
                          United States Attorney

By:   /s/ James Curt Bohling
        James Curt Bohling,  #54574
        Chief, Monetary Penalties Unit
        Assistant United States Attorney
        400 E. 9th Street, Fifth Floor
        Kansas City, Missouri 64106
        Telephone: (816) 426-3122
        E-mail: mailto:curt.bohling@usdoj.gov

## VERIFICATION

I, Task Force Officer Scott Simmons, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the United States Drug Enforcement Administration, that I have read the foregoing Verified Complaint in Rem and know the contents thereof, and that the factual matters contained in paragraphs eight through twenty-eight of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Dated   08/03/2014                           /s/ Scott Simmons
                                             Scott Simmons
                                             Task Force Officer
                                             Drug Enforcement Administration